

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 AUG 24  A 11: 06

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**MARGARET M. SHIMON, ET AL**          **CIVIL ACTION**

**VERSUS**                              **NO. 05-1392**

**SEWERAGE AND WATER BOARD of NEW ORLEANS**   **SECTION "B" (3)**

## RULING ON MOTION TO QUASH

Before the Court is Third Party Defendant Eustis Engineering Inc.'s (Eustis') Motion to Quash and Alternatively for Protective Order [Rec. Doc. No. 646], regarding its expert witnesses depositions, noticed to take place over a two day period by defendant, Sewerage and Water Board of New Orleans (S&WB). The S&WB filed a formal opposition memorandum [Rec. Doc. No. 660] and, on August 16, 2006, the matter was the subject of oral hearing. The matter was taken under advisement. For the following reasons, Eustis' Motion to Quash is GRANTED.

## BACKGROUND

The captioned case is now one of approximately sixty-six consolidated cases, most of which were removed from Civil District Court for the Parish of Orleans in the first part of 2006. Plaintiff property owners filed suit against the S&WB, First Specialty Insurance Co., American Empire Surplus Lines Ins. Co., United National Ins. Co., Fidelity Excess and Surplus Ins. Co., to recover property damages allegedly caused by the S&WB initiated and instituted drainage improvement project, *i.e.*, the Southeastern Louisiana Urban Flood Control Project, Napoleon Avenue Covered Canal ("the SELA Project"). The SELA Project called for the construction of

1



Fee_____
Process_____
X  Dktd_____
✓  CtRmDep_____
___ Doc. No_____

drainage improvements in accordance with specifications and supervision provided by the Army Corps of Engineers ("the Corps"), with funding provided by the federal government and the City of New Orleans in an arrangement between the Project's co-sponsors, the Corps and the S&WB.

SELA Project work which allegedly caused and continues to cause property damage includes: engineering/construction design, pile driving, continuous vibration, concrete breakage/removal, water drainage/dewatering, soil excavation, earth moving, equipment hauling, debris removal, interruption/change in traffic pattern/public transportation system and other construction related conduct. Theories of liability include strict liability, negligence and inverse condemnation.

All of the SELA Project cases removed to this Court were consolidated for purposes of all pretrial proceedings, including disposition of common issues. A consolidated case management order[1] was implemented and the parties are now preparing for the first flight of cases.

Most recently, the S&WB noticed the depositions of Eustis' experts – William Gwyn/Eustis' Chief Engineer, Thomas Stremlau/ Eustis Engineer, John Quidley[2] – however, as "fact witnesses" who arguably must be deposed prior to S&WB's expert deadline.[3] The depositions were noticed for September 6 and 13, 2006. Thereafter, Eustis filed the subject

---

[1] *See* Pre-Trial Consolidation and Case Management Order for Cases Arising out the SELA Project filed April 20, 2006 [Rec. Doc. No. 92].

[2] John Quidley's deposition was noticed unilaterally with no prior request. *See* Email Correspondence of S&WB's dated July 24, 2006, 5:12 P.M. (following up on its earlier e-mail request for the depositions of Eustis "fact witnesses," "William Gwyn, *Chris Saucier* and Thomas Stremlau" but not John Quidley) [Rec. Doc. No. 646/Eustis' Exhibit 1].

[3] *See* Exhibit 3 *in globo* to Eustis' Motion to Quash [Rec. Doc. No. 646].

2

motion to quash and/or for protective order.

It is uncontested that three actions involving the SELA Project have already been tried in state court, including the state court suits brought by plaintiffs Carlos R. Galan, M.D., Jean and Fred Feran and Rita and Henry Holzenthal (the "*Holzenthal, et al* claims") regarding damage to property located in New Orleans, Louisiana at 1925 So. Dupre St., 4439 So. Galvez St., 4416 So. Galvez St., 4200 Gen. Pershing St., and 4509 So. Johnson St.[4] Additionally, the district judge in this case recently ruled that the state court's dismissal of the S&WB's claims in *Holzenthal, et al* bars the S&WB's claims against James Construction Group, LLC ("James"), Schrenk & Peterson Consulting Engineers, Inc./Security Insurance Company of Hartford ("Schrenk") and Brown, Cunningham & Gannuch, Inc. ("BCG") in the *Shimon, Sheen, Blalock* and *Smith* cases in these consolidated proceedings.[5]

It is undisputed that the S&WB contracted with BCG to provide certain services with respect to the SELA Project, including a dewatering monitoring program.[6] Additionally, the S&WB cannot dispute that BCG subcontracted the dewatering monitoring program to Eustis.[7]

---

[4]*See* James Construction Group, LLC's Motion for Summary Judgment at Exhibit 1 [Rec. Doc. No. 449]; Opinion dated July 24, 2006 at pp. 2-3 (granting motions for summary judgment dismissing the S&WB's third party claims against James Construction Group, LLC, Schrenk & Peterson Consulting Engineers, Inc., Security Insurance Company of Hartford and Brown, Cunningham & Gannuch, Inc.) [Rec. Doc. No. 593].

[5]*See* Opinion dated July 24, 2006 [Rec. Doc. No. 593].

[6]*See id.,* at p. 2.

[7]*See* S&WB's First Supplemental and Amending Third Party Complaint at p. 20 ¶ XXXII ("Eustis was contracted by BCG to conduct a ground water study and monitoring program in connection with the SELA project.") [Rec. Doc. No. 28]; S&WB's Memorandum in Opposition to BCG's Motion for Summary Judgment at p. 5 (same) [Rec. Doc. No. 519].

## **PARTIES' CONTENTIONS**

Eustis contends that, at the outset, S&WB was apprised that Eustis' employees would not be available for deposition during hurricane season as they were heavily involved in ongoing activity aimed at securing/protecting the city from further future hurricane damage. As foretold, Eustis declined as to set depositions of its witnesses/experts when requested to do so by the S&WB's counsel.

Eustis explained that Gwyn and Stremlau could not be made available until after hurricane season and that, in any event, the S&WB previously participated in the two-day deposition of Eustis/Gwyn in a related state court case (*Holzenthal, et al*).[8] In this regard, Eustis highlights that additional discovery of Gwyn/Eustis is unreasonably cumulative, duplicative, burdensome and expensive, since the Board had ample opportunity to obtain and is already in possession of all the factual information (documents and testimonial evidence) sought now. Additionally, Eustis notes that its employees are all listed as expert witnesses and thus may not be deposed until their reports are issued in accordance with the Joint Case Management Order.

Eustis contends that the recently noticed deposition of Gwyn is unduly burdensome and

---

[8]*See also* Eustis' Objections and Responses to the First Set of Discovery Propounded by the S&WB objecting to duplicative discovery, to wit:
> "On or about February 25 & 27, 2004, before the Board made Eustis a party and before Eustis was represented by counsel, the Board participated in a two-day long deposition of the corporate representative of Eustis. At the deposition, the Board obtained all of Eustis' files. The discovery issued by the Board is both unreasonably cumulative or duplicative.... The Board's second wave of SELA discovery directed to Eustis is improper. Fed. R. Civ. P. 26(B)(2).... Eustis objects to the production of physical records for the second time in a SELA civil action at a location other than counsel for Eustis' office. Eustis offers to provide images of all records provided all parties share proportionately in the scanning and the duplication costs."

Rec. Doc. No. 666 at p. 3.

duplicative of Gwyn's prior deposition on February 25 and 27, 2004. The prior deposition was taken by attorneys for the Plaintiffs and the S&WB in related SELA litigation pursuant to La. C. Civ. P. 1442. The deposition transcript of Gwyn/Eustis' testimony spanning a two-day period is legion. Gwyn is both President and Chief Engineer of Eustis and was unrepresented at the time of his prior deposition. Nevertheless, Gwyn produced numerous SELA related documents and *all* of the Eustis documents related to the SELA project; therefore, the S&WB has obtained all of the relevant documents, replete with all of the facts pertaining to Eustis' related services. In summary, Eustis submits that the deposition of Gwyn [or any other Eustis employee] is simply not necessary for purposes of discovering the *facts* relevant to its participation in the SELA project and, for that reason alone, it is overly burdensome.

As to prematurity, Gwyn's status as an expert witness is unquestionable.[9] In this regard, Eustis highlights that the S&WB has previously engaged Gwyn to testify as an expert on more than one occasion in other litigation. Eustis submits that it has cooperated with Board in all respects, citing as an example the Corps of Engineers' FOIA document production. More particularly, even after third-party process was issued by the Board, Eustis invited the S&WB to participate in this endeavor.

In summary, Eustis contends that: (1) the S&WB has failed to comply with the Court's Case Management Order in a number of respects; (2) the Board is attempting to exact either expert testimony prematurely or factual testimony unnecessarily; (3) Eustis has provided the S&WB complete and requisite documentation regarding the SELA project twice; (4) the S&WB

---

[9]*See also* Eustis' Responses to Interrogatory No. 2, at pp. 4-6 (identifying both William Gwyn and Thomas Stremlau as testifying experts) [Rec. Doc. No. 666].

has already had the benefit of a full and complete testimony by Eustis/Gwyn (unrepresented) regarding Eustis'/Gwyn's professional services; and (5) Eustis, whether through Gwyn or any other expert/employee, should not be required to participate in unnecessary factual deposition discovery or premature expert discovery without the minimum of information necessary[10] and called for by the case management order, particularly at a time, when the community of the Greater New Orleans area can ill afford the consequent disruption of necessary design/engineering services related to ongoing flood protection and repair during the height of the 2006 hurricane season.

For its part, the S&WB submits that facts set forth in Eustis' motion papers are wholly inaccurate, largely irrelevant and are calculated to misdirect the Court's focus. The Board begins by characterizing the consolidated SELA Project cases as "litigation involv[ing] 62 cases stemming from roughly 260 separate occurrences."[11] S&WB notes that the thrust of its third party claim against Eustis is that, if the property damage claimed against the Board is deemed valid, said damage was caused, in part, by Eustis' failure to properly design and implement groundwater and settlement monitoring programs. The Board further highlights that Gwyn has never been *personally* deposed and never been questioned about areas relevant to the homes at issue in the *Shimon, Blalock, Smith* and *Sheen* cases.

---

[10]At the time of the hearing, Eustis' counsel tendered correspondence dated June 19, 2006 to the Court, which addresses the extent to which Eustis has cooperated with the Board in an effort to avoid unnecessary discovery and discovery related disputes, *inter alia* [Eustis Exhibit "12" attached hereto and filed herewith].

[11]*See* S&WB's Memorandum in Opposition to Eustis' Motion to Quash, at p. 2 [Rec. Doc. No. 660].

6

The Board argues that the district judge's prior ruling denying Eustis' motion to sever is dispositive of the issue presently before the Court, *i.e.*, whether Eustis is unreasonably refusing to make its experts/employees available for "fact depositions" prior to October 1, 2006 (the Board's expert deadline). In this regard, the Board emphasizes that Eustis' prior motion raised the same arguments and was supported by the same affidavit of William Gwyn detailing Eustis' participation as a critical member of three separate geotechnical engineering design teams working to optimize the damaged levee system in Orleans and the surrounding parishes.

The S&WB emphasizes that the case management order was confected with input from Eustis. The Board argues that, at no time, did Eustis' counsel claim that its personnel would be unable to appear for a deposition prior to the S&WB's expert deadline. The S&WB also notes that it propounded written discovery and Eustis refused to respond on the basis that it performed no "work" in connection with the SELA Project but instead "performed professional services." Instead of reframing its discovery requests to meet the objection, reaching another accommodation, or filing a motion to determine the sufficiency of Eustis' responses, the Board noticed the depositions of Eustis' employees in lieu of written discovery responses.[12]

S&WB submits that it has now complied with its obligation to provide Eustis the CD containing the universe of documents relevant to the SELA project.[13] As to Gwyn's prior

---

[12] The Court notes that it has reviewed Eustis' written discovery responses provided in connection with the subject motion and that it otherwise appears that Eustis responded regarding the services it rendered in connection with the contracts at issue subject to its objections. *See* Eustis' Motion to Supplement the Record with the Complete Exhibit and Responses to S&WB's Interrogatories [ Rec. Doc. No. 666].

[13] *See* S&WB's Memorandum in Opposition to Motion to Quash, at p. 5 [Rec. Doc. No. 660]. *But see* Eustis' Motion for Expedited Hearing/Motion to Compel S&WB to Supplement Discovery filed August 23, 2006, at pp. 3-4 and 13-18 (arguing that "none of the documents listed

deposition, the S&WB characterizes it as simply a corporate deposition concerning damage to three homes on the northern end of Napoleon Ave. The Board notes that plaintiffs noticed the corporate deposition of Eustis in the parallel SELA litigation and that S&WB's counsel asked a total of 22 questions. The Board contends that Eustis has never been questioned relative to the homes at issue in the *Shimon*, *Blalock*, *Smith* and *Sheen* cases.

In sum, the S&WB submits that three depositions over the period of two days time is neither too burdensome nor duplicative, inasmuch as Stremlau and Quidley have never been deposed. Finally, S&WB contends that Eustis cannot foreclose on factual discovery by designating all of its witnesses as experts.

## APPLICABLE LAW

Federal Rule of Civil Procedure 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party...." Further, Rule 26(b)(2) provides that discovery may be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit ...." Fed.R.Civ.P. 26(b)(2). "All discovery is subject to the limitations imposed by Rule 26(b)(2)(i-

---

in the S&WB's disclosures have been produced ... *with the exception of documents from BCG and Eustis' own documents*" and that Board failed to comply with promised production in CD-Rom format, inter alia) [Rec. Doc. No. 687-5].

iii)."[14]

Rule 26(c) of the Federal Rules of Civil Procedure governs the issuance of protective orders. It provides in pertinent part:

> Upon motion by a party or by the person from whom discovery is sought ...and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (1) that the disclosure or discovery not be had;
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters; ....
> If the motion for a protective order is denied in whole or in part, the court, may, on such terms and conditions as are just, order that any party or other person provide or permit discovery.

See Fed.R.Civ.P. 26(c).

The decision to enter a protective order is within the court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir.1995). Rule 26(c)' s requirement of a showing of good cause to support the issuance of a protective order indicates that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." See *In re: Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir.1998) (*citing United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)).

---

[14]*Aetna Life Insurance Co. v. DFW Sleep Diagnostic Center*, 2004 WL 466229 * 2 (E. D. La. 2004) (Berrigan, J.) (quoting Fed. R. Civ. P. 26(b)(1)).

## ANALYSIS

A fair analysis of the merits of the parties' respective positions must begin with some discussion and understanding of the Consolidated Case Management Order[15] presently in effect. This Court's review of the record reveals that the order was entered at the behest of the S&WB and plaintiffs.[16] The SELA Project cases were deemed sufficiently related to enter a consolidation order *for all pretrial purposes* and *all issues in common.* The purpose of the Order of Consolidation/Case Management Order was "to promote the effective management of these cases" and "to reduce duplicative and burdensome litigation in this Court."[17]

From the outset, the S&WB has touted "a *single*, electronic production of the *uni*verse of relevant documents" as one of the principle benefits of the consolidation. On March 28, 2006 the S&WB began the "process of compiling an electronic database of *all documents relevant to the SELA project.*"[18] Indeed, this *universal* theme is a refrain echoed throughout the case management order.

For instance, addressing the deposition discovery specifically, the Case Management Order provides that, "[a]s a general rule, <u>no</u> witness should be deposed on the same subject **more than**

---

[15]*See* Pre-Trial Consolidation and Case Management Order for Cases Arising out the SELA Project filed April 20, 2006 [Rec. Doc. No. 92].

[16]*See* S&WB's Opposition to Boh Bros.' Motion to Compel filed in the Consolidated *Kurtz* case (05cv5933 USDC/EDLa) at p. 2 ("Beginning in the Fall of 2005, plaintiffs and the S&WB attempted to implement a consolidation plan that would aggregate these SELA cases for pre-trial discovery.")

[17]Case Management Order at p. 1-2 and Schedule "A".

[18]*See* S&WB's Opposition to Boh Bros.' Motion to Compel filed in the Consolidated *Kurtz* case (05cv5933 USDC/EDLa) at pp. 3-4.

*once* in these proceedings."[19]  More than one deposition of any witness on the same subject therefore requires a showing of exceptional circumstances, inasmuch as that would be an exception to the general rule set forth in the Case Management Order.[20]  The order further provides that, "[u]nless specifically modified herein, nothing in this deposition order shall be construed to abrogate the Federal Rules of Civil Procedure."[21]

It is difficult to imagine how Eustis' expert engineers' "factual" depositions regarding specialized professional services rendered in connection with contracts related to the SELA Project at issue could differ in any substantial respect from their expert opinions and facts evidenced by all of Eustis' files/documents related to the SELA Project, which have already been provided to the S&WB twice.  The S&WB does not dispute the fact that Eustis previously produced its entire file. Moreover, Eustis' correspondence/reports to BCG were forwarded to the S&WB.

---

[19] Case Management Order at p. 12 § II ¶10(J) (all emphasis added).

[20] On this same note, Rule 26 (c) of the Federal Rules of Civil Procedure, governing the issuance of protective orders, provides in pertinent part that, upon motion by a party *or* by the person from whom discovery is sought and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, oppression, or undue burden or expense, including that the disclosure/discovery not be had,  that the disclosure/discovery may be had only on specified terms and conditions (including a designation of the time or place) or  that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery, *inter alia*.  Similarly, Rule 26(b)(2) provides that the Court may alter the limit on the number of depositions, *inter alia*, for the purpose of precluding discovery that is unreasonably cumulative, duplicative or obtainable from another source that is more convenient and less burdensome.

[21] Case Management Order at p. 15 § III.

11

This Court now turns to the S&WB's argument that the consolidated SELA Project litigation arises "from roughly 260 separate occurrences"[22] and thus requires additional *factual* testimony on the part of Eustis' employees/experts.[23] The district judge has already foreclosed on that argument.[24] However, even assuming *arguendo* that the SELA litigation at issue arose from roughly 260 separate occurrences, this Court is convinced that the S&WB has been sufficiently apprised of the facts *vis a vis* Eustis for purposes of generating expert reports due October, 2006. This Court can conceive of no reason why Eustis' experts (Stremlau and Gwyn) should be deposed *more than once* in connection with the first flight of cases regarding the details of the dewatering monitoring program, particularly since the S&WB has already been apprised of the facts/opinions of Eustis and its experts twice.[25]

---

[22]S&WB's Memorandum in Opposition to Eustis' Motion to Quash, at p. 2 ("This litigation involves 62 cases stemming from roughly *260 separate occurrences .....*") (italicized emphasis added) [Rec. Doc. No. 660].

[23]*See* Opinion dated July 24, 2006 at p. 8 ("The Court is not persuaded by the S&WB's argument that the SELA Project created a series of 'transaction[s] or occurrence[s]' and that the damage to the four homes currently at issue before the Court arose out of separate transactions or occurrences.") [Rec. Doc. No. 593].

[24]*Id.*

[25]*See* Eustis' Response to Interrogatory 1 (noting that, "during the term of the contracts, Eustis developed the factual information that was utilized by Gwyn, *and these facts have been previously dessiminated by Eustis to BCG, and BCG forwarded Eustis' letters and reports to the [Sewerage and Water] Board*" and that these reports were provided to the Board a second time during the two-day corporate deposition of Eustis taken in parallel SELA litigation) [Rec. Doc. No. 666]. *See also* Judgment on Motion for New Trial in the *Holzenthal, et al* Matter at pp. 11 and 12 (noting that Eustis instructions were to convey *all* information to BCG, Eustis "reported their readings to BCG ... on a monthly basis" and BCG "forwarded those monitoring reports from Eustis on to the Sewerage and Water Board") [Rec. Doc. No. 440-5].

As a practical matter, it must be noted that most, if not all, of the claims brought against BCG and its subcontractor Eustis involve allegations of professional errors and/or omissions, to wit:

> "Eustis was contracted by BCG to conduct a ground water study and monitoring program in connection with the SELA project.... Eustis failed to properly design the groundwater monitoring program.... Eustis failed to properly analyze groundwater and settlement data.... [T]he Board is a third party beneficiary to the contract and is, therefore, entitled to recover ... damages occasioned by Eustis' ... failure to perform the contract in a good and workmanlike fashion and in accordance with *applicable professional standards*."[26]

In this regard, Eustis' counsel highlighted at the oral hearing that it performed no work on the SELA Project. Eustis also explained this statement in its responses to written discovery as well, to wit:

> "Eustis performed no work. Eustis rendered only professional services based on information either obtained at a site immediately adjacent to the SELA Project or provided by others to Eustis. The basis for, and Eustis professional advice, in connection with Eustis' completion of the services required in the Contracts are contained in Eustis' interim (letters) and final reports. *Eustis has previously provided all reports to BCG, and BCG transmitted those reports to the Board. Additionally, before the Board named Eustis as a third party defendant, Eustis provided a copy of all SELA and related area reports to all counsel as part of a corporate deposition.* Eustis' files are available for review upon reasonable notice, as set forth in Eustis' Response to the Board's Request for Production of Documents."[27]

The consolidated case management order provides a schedule for expert discovery and submission of expert reports, to wit: (1) Plaintiffs to produce their expert reports by September 1, 2006; (2) S&WB must produce its expert reports by October 1, 2006; and

---

[26] S&WB's First Supplemental and Amending Third Party Demand at pp. 20-21, ¶ XXXII [Rec. Doc. No. 28].

[27] Eustis' Response to S&WB's Interrogatory No. 3 (all emphasis added) [Rec. Doc. No. 666].

13

(3) Third party defendants' (Eustis') expert reports are due in December 29, 2006.[28] The first case is not scheduled for trial until May 29, 2007.[29]

Most notably, the S&WB previously argued to this Court that these expert report "deadlines were staggered to allow the S&WB to depose plaintiffs' experts before providing its expert reports and to allow the third party defendants [such as Eustis] to depose plaintiffs' and S&WB's experts *before* third party defendants' expert were required to produce their expert reports."[30] Additionally, the S&WB noted that the third party defendants obtained ninety days to provide their expert reports to make sure that all of the plaintiffs' *and S&WB's experts* could be deposed before the third party defendants were required to produce their expert reports [and, concomitantly, third party defendants' experts for deposition].[31]

The dates of the depositions of Eustis' employees/experts noticed by the S&WB are <u>not</u> consistent with the expert discovery schedule prescribed by the case management order. It is clear that the facts are otherwise available and set forth in Eustis' files, which the S&WB already has within its possession and control. Moreover, the S&WB fails to explain the necessity of Quidley's deposition. Eustis has adequately explained that:

> Mssrs.Gwyn and Stremlau rendered professional engineering services and participated in the Contracts. The other persons listed as Eustis employees ... were either technicians, clerical employees or engineers who were only peripherally

---

[28] Case Management Order at p. 16 ¶¶ 3-5.

[29] *Id.* at p. 17 ¶12(1).

[30] *See* S&WB's Memorandum in Support of Motion to Compel Plaintiffs' Experts' Depositions in September, 2006 at p. 2 [Rec. Doc. No. 433].

[31] *Id.* (italicized emphasis added).

14

involved in the Contracts.[32]

It is this Court's opinion that Eustis' has carried its burden of demonstrating good cause for the issuance of an order quashing the noticed depositions of Eustis' employees/experts. Indeed, Stremlau and Gwyn may only be deposed *once* regarding the subject matter and, consistent with the schedule set forth the case management order, the timing of these depositions should be *after* Eustis' expert reports are exchanged. Because Gwyn/Eustis have previously been deposed in parallel SELA state court litigation and the S&WB already has within its possession all of Eustis' files, the undersigned is not convinced by the S&WB's argument that "factual" depositions of Eustis' experts are a necessary prerequisite to issuance of S&WB's expert's reports. The Board is already sufficiently apprised of *all of the facts* relative to the professional services rendered by Eustis in connection with the subject contracts. If, prior to the expiration of its expert deadline, the Board feels the need for formal production of all of Eustis' files again (*within the confines of the captioned consolidated proceedings*), Eustis' has previously formally offered to make its files available for review and copying upon reasonable notice, as set forth in its Response to the Board's Request for Production of Documents.

For all of the reasons set forth hereinabove, the undersigned has determined that Eustis' motion has merit and is consistent with the governing law set forth above. This Court is not persuaded that the relief requested conflicts with the district judge's prior ruling denying Eustis' motion to sever. Therein, the Court did not address the issues presented here (*i.e.*, duplicative and unnecessary "factual" deposition discovery). Moreover, the undersigned has determined that an order quashing the noticed depositions of Eustis' experts is consistent with the district judge's Case

---

[32]Eustis' Response to S&WB's Interrogatory No. 3 [Rec. Doc. No. 666].

Management Order regarding both (1) witnesses depositions generally (*i.e.*, no more than *once* in these consolidated proceedings regarding a subject) and (2) the mandated expert discovery schedule (*i.e.*, only after December 29, 2006 in the case of third party defendants' experts) . Accordingly,

**IT IS ORDERED** that Eustis' Motion to Quash [Rec. Doc. No. 646] is GRANTED. Nothing said above shall be construed so as to prejudice the S&WB's right to supplement its expert report(s) after it has had the opportunity to depose Eustis' experts consistent with the schedule entered by the district judge and agreed to by all of the parties.

New Orleans, Louisiana, this 24th day of August, 2006.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE