UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARGARET M. SHIMON, wife of/and          CIVIL ACTION
PATRICK SHIMON, et al.

VERSUS                                   NO. 05-1392

SEWERAGE & WATER BOARD OF NEW ORLEANS, et al.   SECTION "B"(3)


ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Remand or in the Alternative, Require SWB to waive Eleventh Amendment Immunity. (Rec. Doc. No. 1309).  After review of the pleadings and the applicable law, and the reasons that follow,

**IT IS ORDERED** that Plaintiffs' Motion to Remand should be **DENIED.  IT IS FURTHER ORDERED** that Plaintiffs' Alternative Motion to Require SWB to Waive Eleventh Amendment Immunity should be **STAYED** until the resolution of the res judicata Fifth Circuit Appeal.

*BACKGROUND*

After repeated street flooding, the United States Army Corps ("Corps") and Sewerage & Water Board of New Orleans ("SWB") entered into a joint drainage improvement project to increase the drainage capacity of the New Orleans metropolitan area.  The project is known as the Southeastern Louisiana Urban Flood Control Project ("SELA Project").  The SWB and the Corps entered into a Project Cooperation Agreement for construction of the SELA

1

Project in Orleans Parish, which entailed dewatering, causing water-table draw-down, heavy equipment movement, and pile driving.  A portion of the SELA Project called for drainage improvements under the median area of Napoleon Avenue in the City of New Orleans ("Project").  To construct that Project, the Corps entered into a construction contract with James Construction Group, L.L.C. ("James"), the Project's general contractor. Complaints regarding the work along Napoleon Avenue led to a lawsuit against SWB who joined James to the lawsuit.

On May 12, 2004, James removed from state court to this Court, the first of the consolidated SELA cases, *Furiegh v. Sewerage & Water Board of New Orleans* 2004 WL 1794524 (E.D.La 2004).  James invoked the Federal Officer Removal Statute 28 U.S.C. §1442(a)(1) for this removal.  In the *Furiegh* and *Miles* cases, Judge Duval denied plaintiffs' motions to remand, upholding federal jurisdiction.  *See Miles v. Sewerage & Water Board of New Orleans* 2004 WL 1794527 (E.D.La 2004)  Meanwhile, James and other third party defendants prevailed at a trial on the merits in *Holzenthal v. Sewerage & Water Bd. of New Orleans*, 953 So.2d 71 (La. 3/30/07).  Based on their victory in the *Holzenthal* litigation, James and other third party defendants in the *Shimon, Blalock, Smith and Sheen* cases pending in this Court, filed Motions for Summary Judgment based on a res judicata defense.  The Court granted these Motions and denied the

2

subsequent Motion for Reconsideration.  At the request of the SWB, these decisions were certified as final judgments under Rule 54(b), and all SELA proceedings in this Court were stayed pending the SWB's appeal.  (Rec. Doc Nos. 1265 & 1308).  Despite the pendency of the appeal and the issuance of a stay, SELA Plaintiffs have filed a Motion to Remand, or in the Alternative, Motion to Require the SWB to Waive Eleventh Amendment Immunity From Suit in Federal Court (Rec. Doc. No. 1309).

Plaintiffs contend in their Motion to Remand that the this Court does not have subject matter jurisdiction because James improperly invoked the Federal Officer Removal Statute. Plaintiffs allege that James did not meet the requirements for removal under the Federal Officer Removal Statute because James (1) failed to prove direct control by federal officer, (2) failed to prove a casual nexus between state law claims and James' alleged compliance with federal directives, and (3) failed to raise a colorable federal defense.  Plaintiffs assert that a lack of subject matter jurisdiction may be raised at any time even on appeal after final judgment.  In addition to the issue of whether James properly removed this case, Plaintiffs further allege that the State must expressly waive sovereign immunity in order for supplemental jurisdiction to be exercised.  Finally, Plaintiffs assert that even if the Court finds jurisdiction exists, it should decline to exercise supplemental jurisdiction because of

3

changed circumstances, unnecessary delay, and the burden on
Plaintiffs.

Third Party Defendants contend that the Notice of Appeal
divests the District Court of jurisdiction to hear a motion to
remand.  In addition, the Defendants contend that the Board is
not entitled to Eleventh Amendment Immunity, as SWB does not
satisfy the six-pronged test of a state entity entitled to raise
the Eleventh Amendment Immunity Defense.  Defendants further
claim that only SWB can raise Eleventh Amendment Immunity
Defense.

The Sewerage and Water Board of New Orleans contends that
this Court should continue to exercise its supplemental
jurisdiction as there have been no changed circumstances as a
remand would only prove duplicative and waste judicial resources.
In addition, SWB contends that Plaintiffs have no authority to
support their challenge of original jurisdiction or Eleventh
Amendment claim.  SWB claims that it is indisputably a local
political subdivision without Eleventh Amendment Immunity.
Finally, SWB argues that federal judgments against local
political subdivisions based on state law are subject to all the
state law protections against enforcement.  *This argument,
however, is beyond the scope of the Motion to Remand.*

James Construction Group L.L.C. contends that it properly
invoked the Federal Officer Removal Statute by satisfying all

four prongs required of the corresponding test for such removal. In addition, James argues that remand is improper after entry of final judgment and highlights Judge Duval's rulings relating to removal.

*DISCUSSION*

**SUBJECT MATTER JURISDICTION and STANDARD FOR REMAND**

Supplemental Jurisdiction may be exercised over state law claims when a case has been properly removed to or filed in federal court.  28 U.S.C. §1367.  However, in consideration of judicial economy, convenience and fairness, when state claims substantially predominate over a federal claim, a court may decline supplemental jurisdiction.  *Crocker v. Borden, Inc.,* 852 F.Supp. 1322 (E.D.La. 1994).

The burden of proof for establishing federal jurisdiction is placed upon the party seeking removal.  *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir. 1998).  "If the right to remove is doubtful, the case should be remanded."  *Ryan v. Dow Chemical.,* 781 F. Supp. 934, 939 (E.D.N.Y. 1992).  28 U.S.C. 1447©) permits remand of a case for lack of subject matter jurisdiction "at any time before final judgment." In *In re Carter*, the Fifth Circuit granted a petition for writ of mandamus and ordered the district court to vacate its remand order issued after entry of final judgment, citing § 1447(c). 618 F.2d 1093 (5th Cir. 1980), *cert. den.*, 450 U.S. 949, 101 S.Ct. 1410 (1981).  In *Lupo v. Human*

5

*Affairs International, Inc.*, the Second Circuit held that the filing of a notice of appeal prior to the district court's ruling on a motion to remand divested the district court of jurisdiction. 28 F.3d 269, 271 (2nd Cir. 1994).

**A.   Removal via Federal Officer Removal Statute**

Third Party Defendant, James Construction Group L.L.C., removed the impending consolidated cases to federal court by way of the Federal Officer Removal Statute 28 U.S.C. §1442(a).   In order to properly invoke the Federal Officer Removal Statute, the removing party must show that: (1) the party qualifies as a person under the statute; (2) the party acted under the direction of a federal officer; (3) the party has raised a federal defense to the plaintiff's claims; and (4) the party has demonstrated a causal nexus between plaintiff's claims and acts it performed under color of federal office.  *Mesa v. California,* 489 U.S. 121, 131-132, 109 S.Ct. 959, 966, 103 L.Ed.2d 99 (1989).   Removal pursuant to this statute ensures "a federal forum in any case where a federal officer [or person acting under a federal officer] is entitled to raise a defense arising out of his official duties."  *Arizona v. Manypenny,* 451 U.S. 232, 241, 101 S.Ct. 1657, 1664, 68 L.Ed.2d 58 (1981).

In order to determine if James properly invoked the Federal Officer Removal Statute thereby securing federal jurisdiction, the above-mentioned four-pronged test must be applied to the

6

facts before this Court.  The first prong of the test questioning whether or not the party constitutes a person has not been contested by any party.  The second prong, however, remains in dispute as to whether or not James acted under the direction of a federal officer.  The Fifth Circuit recognized that a private company acted under the direction of a federal officer when it demonstrated that in connection with a contract the company entered into with the government the following: the government maintained strict control over the development and production of the product at issue; the government required the production to be done in accordance with the government's specifications set forth in government contracts and documents referenced therein; and the government performed inspections.  *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398-400 (5th Cir. 1998).  In *Crocker v. Borden, Inc.*, the affidavit that showed that the contractor acted under the Navy's ". . . close, constant, and detailed control and supervision. . . exercised by contract documents, design and construction drawings, written specifications, and personal oversight of [the contractor's] work by naval officers. . ." was sufficient to show control of a federal officer. 852 F.Supp. 1322, 1325 (E.D.La. 1994).

The second prong of the test requiring federal officer control was satisfied in the impending matter and highlighted by the Project Cooperation Agreement Between the Department of the

Army and SWB, Project plans and specifications[1], as well as by James' removal affidavits.  The Corps not only occupied and staffed a full time field offices at the project site and performed daily inspections of James' work, but it also required James to seek approval of work and equipment to be used and prepared Quality Assurance Reports, whose importance was minimized by Plaintiffs.[2]  Moreover, the Corps Project Cooperation Agreement stated that "all work on the Project. . . shall be exclusively within the control of the Government."[3]  The Government also provided very detailed project specifications pertaining to the monitoring of vibrations, the driving of timber piles,[4] and the specifications on dewatering and the construction of the temporary restraining structure.[5]  Finally, in a letter to

---

[1] *See* Project Cooperation Agreement Between the Department of the Army and Sewerage and Water Board of New Orleans for Construction of the Orleans Parish for Construction of the Orleans Parish Portions of the Southeast Louisiana, Louisiana Project, James Exhibit 1 (A); *see also* Removal Affidavit of James, James Exhibit 5; *see also* Examples from the Specifications of the Government's Detailed Supervision of the Project, James Exhibit 6-7.

[2] Removal Affidavit of James, James Exhibit 5.

[3] *See* Project Cooperation Agreement Between the Department of the Army and Sewerage and Water Board of New Orleans for Construction of the Orleans Parish for Construction of the Orleans Parish Portions of the Southeast Louisiana, Louisiana Project, James Exhibit 1 (A)

[4] See James Exhibit 6 (Paragraph 7.2.3)

[5] See James Exhibit 7 & 8

James, dated August 14, 2003, the Corps chief engineer for the project, Timothy Roth, informed James that its work had been accepted and was within compliance with the Project plans and specifications.[6]  This letter serves as additional evidence of direct control over the operation since the Corp did in fact approve and note the compliance of James' work.

Plaintiffs point to statements made by Joseph H. Rouse, Acting Chief of the Tort Claims Division of the United States Army Corps of Engineers, which denied any liability on the part of the Corps.  Rouse asserted that "James was responsible for all aspects of construction, in particular the design and installation of a temporary restraining wall and the design and installation of a dewatering system. . . James was responsible for work site and day-to-day performance of the contract with only general oversight responsibilities by the United States."[7] This statement contradicts the contractual measures taken to ensure federal oversight.  However, without additional support, these statements do not outweigh the measures of oversight explicitly noted in the evidence presented before this Court. While Plaintiffs correctly allege that James was afforded some

---

[6] August 14, 2003 letter from Timothy Roth attached to James Exhibit 5

[7] *See* May 6, 2005 letter from Joseph Rouse to Edward Kurtz, attached to Plaintiffs' Memo in Support of its Motion to Remand, Exhibit 3

discretion in carrying out duties, the discretion allowed does not circumvent the control reserved and exercised by the federal officer.

Plaintiffs allege that James has failed to raise a federal defense against the state law claims against Defendant, despite the fact that James has claimed Federal Contractor Immunity. Raising a colorable federal defense represents the third prong of the Federal Officer Removal Statute test laid out by *Mesa*. However, according to *Boyle v. United Technologies Corporation*, certain matters, such as obligations to and rights of the United States under its contracts, are federal concerns, despite the absence of a federal statute specifically addressing the issue. 487 U.S. 500, 505 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Specifically, in *Yearsley v. W.A. Ross Construction Co.,* the Supreme Court rejected an attempt by a landowner to hold a construction contractor liable under state law for the erosion of 95 acres caused by the contractor's work in constructing dikes for the Government. 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940). The Court stated, "[i]f [the] authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." *Id.* at 20-21, 60 S.Ct., at 414. This defense may immunize contractors from liability.

Plaintiffs allege that the Federal Contractor Defense is not applicable since a private contractor is entitled to share in federal immunity only where there has been compliance with federal specifications. *Yearsley*, at 20-21. However, the Third Party Plaintiffs' accusations of non-compliance does not on its face refute James' contentions that federal specifications were followed and that its work was accepted by the Corps in the SELA Project activities. Hence, this Court should not bar James from using this defense.

Finally, a causal nexus between the Plaintiffs' claims and the acts performed by the party acting under the color of federal statute must be demonstrated. Plaintiffs allege that because SWB has accused James of breaching its contract with SWB, removal under the statute is not permitted because of the alleged non-compliance with the government contract. Plaintiffs' state claims against James revolve around the question of causation as it relates to the damage that resulted from James' involvement in the SELA Project activities. James does claim that its actions comply with the contract as it points to the detailed and comprehensive project specifications, and this work had been accepted by the Corps. Hence, a causal connection between the Plaintiffs' claims and the acts performed under the color of federal statute has been demonstrated.

The challenge to the use of the Federal Officer Removal

11

Statute does not withstand the evidence presented before this Court that satisfies all four prongs of the test outlined by *Mesa*.  Not only is the prong requiring that the party qualify as a person under the statute uncontested, but James has satisfied the remaining prongs of the test showing that James acted under the direction of a federal officer; James raised a federal defense to the plaintiff's claims (Federal Contractor Defense); and James has demonstrated a causal nexus between plaintiff's claims and the acts it performed under color of federal office.

**B.  Notice of Appeal Divests the District Court of Jurisdiction to hear a Motion to Remand**

Based on the Defendant's victory in the *Holzenthal* case in state court, this Court granted subsequent Motions for Summary Judgment based on res judicata and denied a Motion for Reconsideration.  At the request of the SWB, these decisions were certified as final judgments under Rule 54(b), and all SELA proceedings in this Court were stayed pending the SWB's appeal. (Rec. Doc Nos. 1265; 1308).  Since these actions, Plaintiffs have filed a Motion to Remand.

Statutory and case law both address the question of if a district court may remand a case after a final judgment has been entered.  According to 28 U.S.C. § 1447©), a case may be remanded at "anytime before final judgment."  The Fifth Circuit in *In re Carter* further confirmed the literal interpretation of the

statute by vacating a district court order of remand, which had
been issued after final judgment.  618 F.2d 1093 (5ᵗʰ Cir. 1980),
*cert. den.*, 450 U.S. 949, 101 S. Ct. 1410 (1981); *see also
Winchester v. U.S. Attorney for the Southern District of Texas,*
68 F.3d 947 (5ᵗʰ Cir. 1995); *see also Lopo v. Human Affairs
International, Inc.,* 28 F.3d 269 (2ⁿᵈ Cir. 1994).  However, the
Fifth Circuit ruled in *In re McCloy* that a lack of subject matter
jurisdiction may be raised at any time, even on appeal after
final judgment. 296 F.3d 370, 373 (5ᵗʰ Cir. 2002).  In *In re
McCloy*, the final judgment at issue was a settlement approved by
the court in an involuntary bankruptcy matter, and the Fifth
Circuit cited *Giles v. NYLCare Health Plans* as support for the
its broad holding regarding remands. 172 F.3d 332 (5ᵗʰ Cir. 1999).
 A closer examination of *Giles* reveals that the Fifth Circuit has
jurisdiction to review non-§ 1447©) remands, which constitute a
narrow class of cases.  *Id*. at 336.  The most critical
distinction between *Carter* and *McCloy* and *Giles,* however, is that
*Carter* discusses when a case may be remanded generally under
§1447©) by a district court, while *McCloy* and *Giles* discuss the
basis of appellate jurisdiction to review appeals of remand
decisions or where the Court of Appeals may hear a remand claim
raised for the first time.  Since the remand motion has been
brought before the **district court** for the first time while there
is a separate appeal pending before the Fifth Circuit, the notice

13

of appeal divests the district court of jurisdiction to hear the present motion to remand as this matter.

**C.  Eleventh Amendment Immunity**

Plaintiffs contend that SWB can and should be required to waive its Eleventh Amendment Immunity as it is an agency of the State of Louisiana.  In *Hess v. Port Authority Trans-Hudson*, the Supreme Court articulated that Eleventh Amendment Immunity works to prevent judgments from depleting state treasuries and to maintain the integrity retained by each state in the federal system.  513 U.S. 30, 115 S.Ct. 394, 130 L.Ed. 2d 245 (1994). Eleventh Amendment Immunity applies to state agencies that may be properly characterized as arms of the State, but affords no protection to local government entities, such as parishes, counties and municipalities. *Porsche v. St. Tammanay Parish Sheriff's Office*, 667 F.Supp.2d 631, 633 (E.D.La 1999); *see also Port Authority Trans-Hudson Corp. V. Feeney,* 495 U.S. 299, 110 S.Ct. 1868, 1877, 109 L.Ed.2d 264 (1990)(Brennan, J., concurring in part and concurring in judgment).

Eleventh Amendment Immunity may be waived only when Congress has expressly abrogated it by statute or where the state waives its immunity and consents to suit in federal court.  *Clark v. Barnard,* 108 U.S. 436, 447 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883). Waiver of such Eleventh Amendment Immunity must be stated by the most express language or by such overwhelming implication from

14

the text as will leave no room for any other reasonable
construction. *Edleman v. Jordan,* 415 U.S. 651, 673 (1974).

The Fifth Circuit utilizes a six-factor test to determine
whether a suit against a governmental entity constitutes a suit
against the state: (1) whether the state statutes and case law
view the agency as an arm of the state; (2) the source of the
entity's funding; (3) the entity's degree of local autonomy; (4)
whether the entity is concerned primarily with local as opposed
to statewide problems; (5) whether the entity has the authority
to sue and be sued in its own name; and (6) whether the entity
has the right to hold and use property. *Clark v. Tarrant County,
Texas*, 798 F.2d 736, 744 (5th Cir. 1986).

The application of the six factors to the facts present in
the impending matter demonstrates that SWB is an agency or
subdivision of the state. *Warfield v. Fink and McDaniel Plumbing
and Heating*, 203 So.2d 827 (La.App. 11/6/67).  The SWB bears the
power to expropriate any property convenient or necessary and
proper to its public systems of sewerage and water, however, the
Louisiana Supreme Court held that such power granted by the
Legislature carried with it the capacity to be sued. *Id.* at 827;
*State ex rel. Saunders v. Kohnke*, 109 La. 838, 33 So. 793 (1903).
The Louisiana legislature has thus granted authority for SWB to
sue and be sued, amounting to the waiver of governmental immunity
from suit. *Warfield* at 829; *Hamilton v. City of Shreveport*, 247

15

La. 784, 174 So.2d 529; *Walesch v. City of New Orleans*, 195 So.2d
302 (La.App. 2/13/67); *Binnings Const. Co. V. Sewerage Dist. No.
1, etc.*, 174 So.2d 183 (La.App. 4/5/65).

 The waiver of Eleventh Amendment Immunity, however, only
extends to state courts as LSA-R.S. 13:5106 explicitly states,
"[n]o suit against the state or a state agency or political
subdivision shall be instituted in any court other than a
Louisiana state court." *Cozzo v. Tangipahoa Pairsh Council-
President Gov't,* 279 F.3d 273, 281 (5th Cir. 2002).   Therefore,
claims against the SWB in federal court may only be brought when
the Eleventh Amendment Immunity has been waived.   While
Defendants assert that only the state can raise the Eleventh
Amendment Immunity defense, no case law is presented in support
of this assertion.   Instead, the Board must voluntarily consent
to removal in order to waive its immunity as the impending matter
was removed without SWB joining in such removal.   *See Lapides v.
Board of Regents of University of Georgia*, 535 U.S. 613, 122
S.Ct. 1640 (2002); *Frazier v. Pioneer Americas, LLC*, 455 F.3d
542, 547 (5th Cir. 2006).   Further, the exercise of jurisdiction
over a state court defendant does not defeat Eleventh Amendment
Immunity , as the Court may ignore immunity until the state
defendant asserts it.   *Frazier,* at 547.

 While case law would support requiring SWB to explicitly
waive its Eleventh Amendment Immunity, its refusal to do so may

result in an alteration of the status of the case as it rests before the circuit court.  *See Dayton Independent School District v. United States Mineral Products Co.,* 906 F.2d 1059, 1063 (5th Cir. 1990).  Therefore, this Court will stay this requirement pending the resolution of the appeal pending before the Fifth Circuit.

### D.  The Exercise of Supplemental Jurisdiction

Federal law permits severance and remand of non-federal claims. 28 U.S.C. § 1367.  District courts may decline to exercise supplemental jurisdiction if the claim substantially predominates over the claim or claims over which the district court has original jurisdiction.  28 U.S.C. § 1367©)(2).  The changed circumstances alleged by Plaintiffs proves baseless as they cite their intentions to prevent further delay as their purpose.  However, Plaintiffs fail to illustrate how remanding this matter to state court would prevent further delay in the matter and not prove to be duplicative or a waste of judicial resources.  *See Crocker v. Borden, Inc.,* 852 F.Supp. 1322 (E.D.La. 1994).

In sum, Plaintiffs' Motion to Remand is **Denied** because James Construction L.L.C. properly invoked the Federal Officer Removal Statute.  Furthermore, this Court has been divested of jurisdiction to hear the Motion to Remand by the Notice of Appeal.  In addition, Plaintiffs' alternative motion to require

SWB to waive Eleventh Amendment Immunity is **STAYED** until the resolution of res judicata Fifth Circuit Appeal because requiring SWB, which does enjoy Eleventh Amendment Immunity, to waive its Eleventh Amendment Immunity may result in an impermissible material alteration of the case pending before the Fifth Circuit.

New Orleans, Louisiana, this 5th day of December, 2007.


IVAN L. R. LEMELLE
UNITED STATES DISTRICT JUDGE