UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARGARET M. SHIMON, ET AL.**                     **CIVIL ACTION**

**VERSUS**                                         **NO. 05-1392**
                                                   **REF: 05-3326**

**SEWERAGE & WATER BOARD OF**                      **SECTION "B"(3)**
**NEW ORLEANS, ET AL.**

## ORDER AND REASONS

Defendant, Standard Fire Insurance Company's ("Standard Fire"), Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 (Rec. Doc. No. 1878), opposed by Plaintiff at Rec. Doc. No. 1890, and Defendant Sewerage and Water Board of New Orleans ("SWB") at Rec. Doc. No. 1887 is **DENIED**.

### Contention of Movant

Movant argues that Plaintiffs Patrick and Christine Wilson's claims for property damage are excluded by Movant's insurance policy. (Rec. Doc. No. 1878, at 1). Specifically, Movant contends that the Policy at issue unambiguously excludes Plaintiffs' loss pursuant to: (1) the ordinance or law exclusion, (2) the earth movement and water exclusions, (3) the acts or decisions by governmental bodies exclusion, and (4) the faulty, inadequate, defective planning, designs, specifications, zoning, development and construction exclusion. (Rec. Doc. No. 1878-2, at 3).

Additionally, Movant contends that Plaintiffs' bad faith claim under the Louisiana Insurance Code does not alter Plaintiffs'

allegations as to the cause of damage to Plaintiffs' home nor does Plaintiffs' bad faith claim alter Movant's substantive arguments in its motion for summary judgment.  (Rec. Doc. No. 1899, Exhibit A).

**Contention of Plaintiffs**

In Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, Plaintiffs contend that the Earth movement exclusion does not bar coverage under the Policy.  Specifically, Plaintiffs argue that under the Standard Fire policy, the term Earth Movement is defined solely as: 1) earthquake; 2) landslide; 3) mine subsidence; and, 4) mudflow.  (Rec. Doc. No. 1890, at 2).

Next, Plaintiffs contend that the Ordinance or Law Exclusion does not bar coverage under the Policy.  (Rec. Doc. No. 1890, at 3).  Plaintiffs argue that Standard Fire fails to cite any applicable law or ordinance which regulates the construction alleged to have caused the home damage at issue. (Rec. Doc. No. 4, at 3).

Lastly Plaintiffs assert, that coverage is not barred by  the "acts or decisions by governmental bodies exclusion" nor the "faulty, inadequate, defective planning, designs, specifications, zoning, development and construction exclusion" because the Policy expressly provides coverage under the "ensuing loss" provision. (Rec. Doc. No. 1890, at 5).

## Law and Analysis

**I.  Standard of Review**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).  Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998).  The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id.*  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc.,* 7 F.3d 1203, 1207 (5th Cir. 1993).

In a diversity case such as this, federal courts must apply state substantive law.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  The parties agree, and Louisiana choice of law rules

dictate, that in an action involving interpretation of insurance policies issued in Louisiana for property located in Louisiana, Louisiana's substantive law controls. *Cf. Am. Int'l Specialty Lines Ins. Co. V. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court. *Id.* In the absence of a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine how that court would resolve the issue if presented with the same case. In making an *Erie* guess, we must first examine the sources of law in Louisiana, "legislation and custom." La. Civ. Code Ann. art 1 (2011); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007).

**II. Contract Interpretation Under Louisiana Law**

Interpretation of an insurance contract generally involves a question of law. *Bonin v. Westport Ins. Corp.*, 930 So. 2d 906, 910 (La. 2006)(citing *Robinson v. Heard*, 809 So. 2d 943, 945 (La. 2002). Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 843 So. 2d 577, 580 (La. 2003). "[W]here the scope of an insurance policy exclusion is not readily apparent courts do not immediately construe that exclusion in favor of coverage. Instead the courts first apply the general rules of contract construction as set forth in the

-4-

Louisiana Civil Code." *In re Katrina Canal Breaches Litigation*, 495 F.3d at 210.  Under those rules, "the words of a contract must be given their generally prevailing meaning."  La. Civ. Code Ann. art 2047 (2011); see also *Cadwallader*, 848 So. 2d at 580.

The Louisiana Civil Code provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code Ann. Art 2045 (2011); *Cadwallader*, 848 So. 2d at 580. Further, an insurance contract must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy."  La. Rev. Stat. Ann. § 22:654 (2004).

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  La. Civ. Code Ann. art 2046 (2011).  "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written."  *Cadwallader*, 848 So. 2d at 580.

An ambiguous provision of an insurance policy "must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions."  La. Ins. Guar. Ass'n, 630 So. 2d at 763 (citing La. Civ. Code Ann. art. 2050 (2011) ("Each provision in a contract must be interpreted in light of the other provisions so

that each is given the meaning suggested by the contract as a whole.")).

La. Civ. Code. Ann art. 2056 (2011) provides that "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." Under this rule of strict construction, ambiguous provisions seeking to narrow an insurer's obligation are strictly construed against the insurer where the insurer "furnishe[s] the text." That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. *In re Katrina Canal Breaches Litigation*, 495 F.3d at 207 (explaining that each alternative interpretation must be reasonable). The fact that an exclusion could have been worded more explicitly does not necessarily make it ambiguous. *Id*. at 210.

"An insurance contract . . . should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provision beyond what is reasonably contemplated by unambiguous terms or [to] achieve an absurd conclusion." *Cadwallader*, 848 So. 2d at 580, 579.

The Earth Movement Exclusion

The Earth Movement exclusion provision in Standard Fire's policy states:

> 1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. . . .
>
> b. **Earth Movement**, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow, earth sinking, rising or shifting; . . . ."

The Earth Movement exclusionary provision is ambiguous. The term "Earth Movement" is subject to reasonable but different meanings in the context and format of the noted sentence.

In the context of the entire Earth Movement Exclusion provision, we cannot from a plain reading disassociate "earth sinking, rising or shifting" from or within the context of "mudflow" and earthquake in any one exclusive application of same. Formatting and context do matter. It is reasonable to interpret this provision as applying to "earthquake" events only.

In this case, Plaintiffs' Petition for Damages alleges that property damage resulted from "[p]umping out water, resulting in the extreme lowering of water tables thereby causing significant and unnecessarily excessive shifting of soil in the area of the construction." (Rec. Doc. No. 1878-3, at 3).

Genuine issues of material facts exist regarding the applicability of the Earth Movement exclusion and other exclusions toward Plaintiffs' complaint for damages to their residence. A complete factual record is needed to resolve defense assertions here, precluding summary disposition.

Therefore, Defendant, Standard Fire Insurance Company's Motion for Summary Judgment is **DENIED**.

New Orleans, Louisiana, this 29th day of August, 2011.

_____
UNITED STATES DISTRICT JUDGE